UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Robert J. Berg.,

                Plaintiff,

-against-

Village of Scarsdale and Village of
Scarsdale Police Department.,
                Defendants.

OPINION AND ORDER
18-cv-1002 (NSR)

NELSON S. ROMÁN, United States District Judge

    Before the Court is Plaintiff Robert J. Berg's application for a preliminary injunction and temporary restraining order. The Court has carefully reviewed Plaintiff's submissions[1] and considered the arguments made by both parties at a show cause hearing held on February 6, 2018 at the United States Courthouse, 300 Quarropas St., White Plains, NY 10601. For the following reasons, Plaintiff's application is GRANTED.

    The Court applies the same standard to Defendant's applications for a preliminary injunction and a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (the "standards which govern consideration of an application for a temporary restraining order [] are the same standards as those which govern a preliminary injunction."); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) (same). It is well established that in order to grant Plaintiff's applications, Plaintiff must show: (1) irreparable harm absent injunctive relief and (2) "either . . . that it is likely to succeed on the merits of the action, or . . . that there are sufficiently serious questions going to the merits to make them a fair ground for litigation,

---

[1] The Court notes that Defendants failed to submit any written opposition to Plaintiff's application for a preliminary injunction.

provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–35 (2d Cir. 2010)). Where, however, "a party seeks an injunction that will affect governmental action taken in the public interest pursuant to a statutory scheme, the plaintiff must typically show a likelihood of success on the merits—a serious question going to the merits is usually insufficient . . . ." *Id.*

The Court assumes the parties' familiarity with the facts underlying this motion. In essence, Plaintiff, a resident of the Village of Scarsdale, brings this action pursuant to 42 U.S.C. § 1983 challenging the constitutionality of Section 256-1 of the Scarsdale Village Code. Section 256-1 provides, in relevant part, that residents may not "obstruct any street, public easement or other public place without first securing a written permit from the Village Engineer and complying with such regulations affecting obstructions as the Village Engineer may prescribe." (Aff. of Robert J. Berg in Supp. of TRO and Prelim. Inj. at 48.) Because the Village of Scarsdale maintains "ownership of [] paved roads [and] thirteen feet (13') on each side of [each] paved road," (*Id.*), the Village has interpreted Section 256-1 as allowing for the removal of unauthorized political signs from the front lawns of residents within the thirteen foot Village "right-of-way." (*Id.*) Plaintiff claims, and the Village apparently does not contest, that the Village Police Department has in fact removed such signs pursuant to Section 256-1. (*See Id.* at 47–52.) Plaintiff contends that the provision, thus, unconstitutionally burdens, and has chilled the exercise of, his First and Fourteenth Amendment right to free speech.

As a preliminary matter, this Court finds that while Plaintiff has not yet personally faced enforcement, he nevertheless has standing to challenge the provision. Courts should "assess pre-

enforcement First Amendment claims . . . under somewhat relaxed standing and ripeness rules."

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). Accordingly:

> [a] plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an actual and well-founded fear that the law will be enforced against it. The alleged danger of the statue is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution. When the Plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, that plaintiff should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

*Id.* at 689–90 (internal quotation marks and citations omitted).

Here, Plaintiff has established an actual and well-founded fear that Section 256-1 will be enforced against him if he exercises his First Amendment right to place political signs on his lawn, which is almost entirely within the thirteen foot Village "right-of-way." (Aff. of Robert J. Berg in Supp. of TRO and Prelim. Inj. at 44.) Plaintiff even received confirmation of the Village's position that it is entitled to remove such signs and even commence criminal proceedings against residents who post them pursuant to New York Penal Law § 145.30. (*See Id.* at 48.) Plaintiff has, thus, shown a sufficiently credible threat of enforcement and prosecution to satisfy standing and ripeness considerations.

Plaintiff has also successfully satisfied the showing of irreparable harm absent injunctive relief. As the Supreme Court has held, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("[W]hen an alleged deprivation of a constitutional right is involved most courts hold that no further showing of irreparable injury is necessary." (internal quotation marks and citations omitted)). Indeed, the Second Circuit has elaborated that "[t]he harm is particularly irreparable where, as here, a

3

plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (internal quotation marks and citations omitted). Time is particularly of the essence in the present action, where the highly contested school bond referendum will take place in three days. The only remaining consideration is, therefore, whether Plaintiff has demonstrated that he is likely to succeed on the merits of this action.

With regard to the merits of Plaintiff's claims, both the Supreme Court and the Second Circuit have previously addressed decidedly similar issues. In *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), the Supreme Court struck down a city regulation that prohibited residential signs, much like the ones at issue in the present action, as violative of the First Amendment. The Court reasoned that "residential signs have long been an important and distinct medium of expression" with no practical substitute. *Id.* at 55. Where a regulation forecloses an entire medium of expression, the Court elaborated, "the danger [it] pose[s] to the freedom of speech is readily apparent—by eliminating a common means of speaking, such measures can suppress too much speech." *Id.* In *Lusk v. Vill. of Cold Spring*, 475 F.3d 480 (2d Cir. 2007), the Second Circuit took the Court's ruling one step further and invalidated an ordinance that required prior approval, which could take up to seventy days to procure, before residents could post signs in front of their homes. *Id.* Although the ordinance in *Lusk* did not institute an outright prohibition on residential signs, the Second Circuit ruled that it nevertheless constituted "an impermissibly broad ban on such speech." *Id.* at 492. Indeed, the Circuit Court found that requiring residents to obtain prior approval before erecting residential signs, "no less than the [ordinance] at issue in *City of Ladue*, almost completely foreclose[s] a venerable means of communication that is both unique and

important, at least pending . . . approval [of the signs]." *Id.* at 491 (internal quotation marks and citations omitted).

The regulatory scheme invalidated by the Second Circuit in *Lusk* is largely indistinguishable from the ordinance presently at issue. For residents like Plaintiff, whose entire lawn space falls within the Village's "right-of-way," Section 256-1 constitutes a near complete foreclosure of an important means of communication. Indeed, Section 256-1 does not place any time limitations on the approval process, allowing for an indefinite restriction on residents' political expression—which is undoubtedly even more troubling than the seventy-five day approval period invalidated by the Second Circuit in *Lusk*.

The Court is mindful that both *City of Ladue* and *Lusk* involved residential signs on private property, whereas Section 256-1 regulates the placement of signs on what is ostensibly property owned by the Village of Scarsdale. However, to the extent that the Section 256-1 permits the Village to police the posting of lawn signs in front of private homes, the First Amendment concerns articulated in *Lusk* and *City of Ladue* remain all too relevant: the Village may not indefinitely foreclose such a historically important means of expression for its residents. *See City of Ladue*, 512 U.S. at 54. ("Signs that react to a local happening or express a view on a controversial issue both reflect and animate change in the life of a community. Often placed on lawns or in windows, residential signs play an important part in political campaigns . . . . They may not afford the same opportunities for conveying complex ideas as do other media, but residential signs have long been an important and distinct medium of expression.")

Accordingly, for the foregoing reasons, Plaintiff's application is GRANTED.

It is ORDERED that Defendants are enjoined from enforcing the provisions of Section 256-1 of the Scarsdale Village Code or taking any other actions against Plaintiff and other

persons with respect to posting political lawn signs in the Village of Scarsdale right of way in front of private homes, so long as said political lawn signs pose no safety or traffic hazards.

Dated: February 6, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge